[No. 12045.   Department Two.   December 28, 1914.]

JAMES DONOFRIO *et al.*, *Respondents*, v. WATSON BROTHERS, *Appellants*.[1]

TROVER AND CONVERSION—TITLE OF OWNER—CHATTEL MORTGAGEES. Chattel mortgagees, placed in possession under an agreement with the mortgagors transferring the title to them, are the owners, and may sue in their own names for a conversion of the chattels.

SAME—VALUE—EVIDENCE—ADMISSIBILITY. In an action for the conversion of a span or horses, evidence of their value at the time they were placed in the hands of the defendants is competent, where there is also evidence that they were of that value at the time of the demand for their return.

SAME—WHAT CONSTITUTES. Refusal of a demand for the return of horses intrusted to defendants for use for their keep, for the reason that the horses had been sold, constitutes a conversion.

SAME — RIGHT OF ACTION — OWNERSHIP — RIGHT OF POSSESSION. Chattel mortgagees, to whom the ownership and right of possession had been transferred by the mortgagors, can maintain an action for conversion, without ever having been in possession.

ANIMALS—AGISTER'S LIEN—PERSONS ENTITLED. No agister's lien on a span of horses can be claimed by one who obtained possession under a special contract to keep the horses for their use without cost, and redeliver the horses at any time upon demand.

Appeal from the judgment of the superior court for King county, Humphries, J., entered December 15, 1913, upon

[1]Reported in 145 Pac. 75.

findings in favor of the plaintiffs, in an action for conversion, tried to the court without a jury.     Affirmed.

*Walter B. Allen*, for appellants.

*Morris B. Sachs*, for respondents.

MOUNT, J.—This action was brought by the plaintiffs against the defendants to recover damages upon an alleged conversion of a team of horses.   The case was tried to the court without a jury.   A judgment was entered in favor of the plaintiffs for the sum of $500, being the value of the horses at the time of the conversion, as found by the court.   The defendants have appealed.

The facts, as shown by the evidence and as found by the court, are briefly these:   In June, 1911, Nardone Brothers were the owners of the horses in question.   At that time, the owners executed a chattel mortgage upon these horses, together with other property, in favor of one D'Ambrosio, as security for the payment of $1,200.   This mortgage was duly recorded.   Thereafter, Nardone Brothers being in default, the mortgagee brought an action in the superior court for King county to foreclose the mortgage.   A receiver was appointed and took possession of the property in that action.   After the appointment of a receiver, the owners substituted a bond for the property and took possession of the horses and other property.   The plaintiffs in this action became sureties upon that bond.   A judgment was entered in that case foreclosing the mortgage.   An appeal was prosecuted from that judgment to this court.   When the appeal was prosecuted, these plaintiffs became sureties upon the appeal and supersedeas bond.   At the time this bond was given, it was agreed between the owner of the horses and the sureties upon the appeal and supersedeas bond that, in case the judgment was affirmed and the sureties were required to pay the judgment, they should become the owners of the horses and other property.   The judgment was thereafter

affirmed in *D'Ambrosio v. Nardone*, 72 Wash. 172, 129 Pac. 1092, and these respondents paid the amount of the judgment, which was $1,316.25. Thereupon Nardone Brothers authorized the respondents to take possession of the horses as owners.

Pending that litigation, the Nardones took this team of horses to the appellants in this case, Watson Brothers, and authorized them to keep the horses at their stable. The testimony on behalf of the respondents in this action shows that at the time the appellants, Watson Brothers, took the horses into their possession, they agreed to use the horses for their keep; and that, if the appellants in the foreclosure suit should be successful, in that event they should retain the horses as security for a debt owing by the Nardones to Watson Brothers; but, in case the Nardones, upon the appeal, should not be successful, Watson Brothers should deliver the horses to the Nardones, or in satisfaction of the foreclosure judgment. After the respondents in this case had paid the judgment in foreclosure, they demanded the team of horses from the appellants, Watson Brothers, who refused to deliver the horses. The evidence tends to show that, when the Nardones demanded the horses on behalf of the respondents, the appellants made the statement that the horses had been sold and could not be delivered. This testimony was disputed by Watson Brothers, who claimed an agister's lien upon the horses for the sum of $230.

The appellants make several assignments of error, to the effect, first, that, under the pleadings, the respondents were not authorized to maintain the action for the reason that they are in effect mortgagees, and are therefore not entitled to the possession. It is no doubt true that, if the respondents were mere mortgagees, they would not be entitled to possession until after foreclosure and purchase by them. But the facts in this case show that they are owners, and entitled to possession of the property because the right of possession was authorized by the owners, the Nardones, after the pay-

ment of the judgment in foreclosure. It is plain, therefore, that there is no merit in the point that they are merely mortgagees.

It is next argued that the evidence of value of the horses in October, 1912, was not proper. As we read the evidence, we think it shows conclusively that the value of the horses was fixed at the time of the conversion by the defendants. It is true there was some evidence which showed that at the time the Nardones purchased the horses, they were of a certain value. At the time they placed the horses with the defendants they were of a certain stated value. And there is also evidence that they were of that value at the time the demand was made for the return of the horses. This is clearly within the rule as stated in *Armour v. Seixas*, 80 Wash. 181, 141 Pac. 308.

It is next argued that no conversion was proven. If the testimony of the plaintiffs and of the Nardones and other witnesses is of any weight, this assignment is entirely without force, because it was shown that when the Nardones demanded the return of the horses, this demand was refused, for the reason that the horses had been sold. This was clearly a conversion.

It is next argued that the respondents have never had possession, nor the right of possession, and therefore cannot maintain the action. Of course these were questions of fact. And according to the statement we have heretofore made, it is clear that the respondents at the time they made the demand were entitled to possession of the property, because the ownership and right of possession had been transferred to them by the former owners. If there was no agister's lien upon the property, the owners were entitled to possession.

It is next argued by the appellants that they are entitled to an agister's lien prior to the mortgage. Assuming that, under the statute, the appellants might have acquired an agister's lien prior to the mortgage, which we do not decide, it is plain from the evidence in the case that the defendants

are entitled to no agister's lien, by reason of a special contract relating to the horses. As we have stated above, it was shown, we think, by a preponderance of the evidence, that at the time the possession of the horses was obtained by the appellants, they agreed that they would keep the horses for their use without cost, and redeliver the horses at any time upon demand. They, therefore, had no valid claim for feeding the horses, and had no agister's lien.

We find no error in the record. The judgment is affirmed.

CROW, C. J., MAIN, FULLERTON, and ELLIS, JJ., concur.